IN THE MATTER OF KEVIN A. MCLAUGHLIN, AN
ATTORNEY AT LAW.

IN THE MATTER OF ELIZABETH SZYMANCZYK, AN
ATTORNEY AT LAW.

IN THE MATTER OF LAURA A. SCOTT, AN
ATTORNEY AT LAW.

Argued November 17, 1986—Decided April 3, 1987.

*Thomas J. McCormick,* Assistant Ethics Counsel, argued the
cause on behalf of Office of Attorney Ethics.

*Jon Steiger* argued the cause for respondent Kevin A.
McLaughlin (*Falvo, Bonello, Moriarty & Steiger,* attorneys).

*Gabriel M. Ambrosio* argued the cause for respondent Elizabeth Szymanczyk.

*Arthur G. Del Colliano* argued the cause for respondent Laura A. Scott.

PER CURIAM.

We recently had occasion to remark on the unhappy reality that "attorneys are not immune from the dangers of drug addiction." *In re Kinnear*, 105 *N.J.* 391, 394 (1987). That observation was supported by the lamentable statistic that in the 1986 Term of Court we have disbarred two lawyers and suspended two others based on their drug-related activities. One of those disbarred was a participant in a major criminal narcotics conspiracy. *Id.* at 394. The conclusion is thus inescapable that the slope of illicit drug use is slippery indeed, leading to a pit at the bottom of which awaits professional disaster for the lawyer who ends up there, to say nothing of the consequences in purely personal terms.

These respondents, caught red-handed in an illegal drug transaction, have come perilously close to wreaking havoc on their promising legal careers. Their misconduct was inexcusable, the more so because of respondents' positions at the time as law secretaries to members of the judiciary. That we have chosen not to blight their progress with a suspension is due not so much to any mitigating circumstances surrounding the offenses themselves as it is to the fact that this is the first occasion on which we have come to grips with an attorney's illegal conduct involving small amounts of a controlled dangerous substance for personal use. See 118 *N.J.L.J.* 762 (1986).

The particulars of the incident, as reported in the Decision and Recommendation of the Disciplinary Review Board (DRB), which heard the matter on review of a report from a hearing panel of the District II–B South Ethics Committee (local Ethics Committee), are as follows:

The three respondents, who had attended law school together, met on May 29, 1984, in a West Orange restaurant. McLaughlin and Szymanczyk had been admitted to the bar of this state in 1983 and were completing their clerkships for Superior Court judges. Scott was not at that time a member of the bar, but was admitted nine days later. [Ms. Scott does not challenge this Court's jurisdiction to subject her to discipline.] She was completing her clerkship for an Appellate Division judge. The three respondents had previously used cocaine. They agreed in the restaurant that they would attempt to obtain cocaine that evening. Scott made arrangements through a friend to obtain the illegal drug from an individual in Lodi.

Respondents drove to the Lodi residence, which was under surveillance by the Bergen County Narcotics Task Force. After each respondent contributed towards the purchase of the cocaine, Scott entered the home, purchased about one gram of cocaine for $100, and returned to her car. She was joined by McLaughlin and Szymanczyk. Respondent Scott held the pack of cocaine in her hand and lifted it towards respondent Szymanczyk who inhaled some of the substance. Members of the narcotics strike force had observed the transaction and immediately arrested the three.

All three respondents, having promptly reported the incident to the judges in whose chambers each was employed, were suspended from their judicial clerkships immediately.

In February 1985 respondents were placed under supervisory treatment in accordance with *N.J.S.A.* 24:21–27 (conditional discharge for certain first offenses). They have all successfully completed the one-year program and are now engaged, separately, in the practice of law. No outstanding criminal charges remain.

In August 1985 the Office of Attorney Ethics filed formal complaints charging McLaughlin with conspiracy to obtain cocaine; Szymanczyk with possession of and conspiracy to obtain cocaine; and Scott with distribution, possession, and conspiracy to obtain cocaine, and with another violation no longer the subject of these proceedings, the charge having been dismissed. The local Ethics Committee determined after a hearing that respondents had engaged in illegal conduct adversely reflecting on their fitness to practice law, a violation of Disciplinary Rule 1–102(A)(3). It recommended a private reprimand.

The DRB conducted an independent review of the record and likewise concluded that respondents had violated the cited Disci-

plinary Rule. The DRB, however, recommended that discipline take the form of a public reprimand. We issued an Order to Show Cause why respondents should not be disbarred or otherwise disciplined, and heard oral argument directed to the DRB's Decision and Recommendation. *See R.* 1:20–5(a). Our independent review of the record leads us to agree with the recommended discipline of a public reprimand.

Respondents do not dispute the finding of an ethical infraction. They focus only on the discipline to be imposed, arguing that a private reprimand is sufficient under the circumstances. Their contentions, as set forth in the brief of respondent Scott, may be summarized as follows: (a) because the amount of cocaine involved was limited to about one gram for three people, this was obviously a limited personal transaction, not part of any larger conspiracy; (b) the event was an isolated one, followed by full cooperation by all the participants; (c) respondents were neophytes in the legal profession, not yet seasoned by the experience and wisdom born of years of practice; (d) subsequent events have demonstrated that this event did not adversely affect respondents' ability to practice law or to deal with clients; (e) respondents have suffered "sufficient anguish, humiliation, loss of earning power through notoriety in legal circles," and have experienced the lack of certainty in professional futures, in which they have invested "years of hard work, expectation, and financial expenses" connected with their legal educations; (f) the event "did not in any manner compromise [their] judicial clerkship[s]," and no judge, client, lawyer, case, or member of the public was "compromised or in any manner affected" by the incident; (g) "the social milieu dealing with the use of cocaine * * * has changed and the attitude [toward drug use] is now much more significantly changed. Public awareness of the detrimental effects of drug use are more widely known * * *. [P]eer pressure for young people at the time of the event was stronger than at the present time * * *."

The DRB's response to these contentions was a measured one, warranting repetition here:

> The Board has weighed carefully the decision whether to recommend public discipline or not. Mitigating factors against public discipline include the fact that respondents were neophytes in the profession and had no prior drug offenses. They have already suffered the public embarrassment of criminal proceedings. However, offsetting these factors are many aggravating factors. They were not adolescents, they were adults: Scott was 27; Szymanczyk, 25, and McLaughlin 32. The public was aware through news articles of the arrests and the positions respondents held within the judiciary. Respondents' conduct must be viewed from the perspective of an informed and concerned private citizen and be judged in the context of whether the image of the bar would be diminished if such conduct were not publicly disapproved. *Cf. In re Opinion No. 415,* 81 *N.J.* 318, 325 (1979). To withhold public discipline could cause the public to believe that the legal profession is not concerned about illicit drug usage, or that judicial law clerks as members of the judicial family had received preferential disciplinary treatment. If this were a criminal proceeding, these public concerns would be of no moment. However, this is a disciplinary matter. Public confidence in the integrity and trustworthiness of the legal profession must be maintained. Not only must the public know that an attorney in this state will be disciplined for committing criminal acts, but the members of the bar must also be reminded that drug possession is a crime.

We endorse the foregoing in its entirety and adopt the DRB's reasoning as our own. As well, we specifically reject, as did the DRB, respondents' contention that for purposes of discipline their judicial clerkships are of no moment. The position of law secretary to a member of the judiciary is earnestly sought by many. It is an honor and mark of distinction that is awarded to only the most highly qualified applicants. One reason for its attraction is that it is perceived—and rightly so—as a source of invaluable experience not to be gained elsewhere. But most importantly for today's purposes, the public sees judicial clerks as, in the DRB's phrase, "members of the judicial family"; and respondents' argument that we should attach no significance to their employment circumstances overlooks the fact that in engaging in illegal conduct they plainly, even spectacularly, compromised not just themselves but the judges for whom they worked. When they dishonored their coveted positions, they tarnished the integrity of the judiciary.

We are not insensitive to the fact that the generation that includes these respondents has grown up in a world different from the one that produced the great majority of our judges, surely including the members of this Court. We acknowledge that generation gaps can cause misunderstandings. But that sometimes painful phenomenon cannot be permitted to mold our response to respondents' criminal behavior. They knew full well the illegal nature of their activity. That society may have been less alarmed by drug abuse in 1984, when these offenses occurred, than it is today—a proposition of questionable validity—is hardly persuasive of indulgence in the face of plainly illicit behavior.

It is our judgment that a private reprimand would be wholly inappropriate to the occasion. We forbear the imposition of a period of suspension only because this is the first time that we have spoken to the question of discipline for a private drug incident of the sort revealed by this record. We very much hope that infractions of this type will be rare, but our confidence in that regard has its limits. Members of the bar would be well advised not to rely on our indulgent treatment of these respondents: similar conduct henceforth will ordinarily call for suspension.

This disposition of the matters before us would not be complete without a word of encouragement—admittedly novel in disciplinary cases—to these respondents. They have transgressed, and they are, through the medium of this opinion, to receive the discipline appropriate for that transgression. The matter is over. What they make of their futures is up to them. Their natural abilities and learned skills are unquestioned. Our hope is that they will successfully shed the burden of this single incident and approach the future with confidence and optimism.

Respondents are publicly reprimanded. They are, in addition, to reimburse the Ethics Financial Committee for costs, including but not limited to the costs of transcripts.

*For reprimand*—Chief Justice WILENTZ, and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN—7.

*Opposed*—None.