655 A.2d 916

IN THE MATTER OF LAWRENCE G.
MAGID, AN ATTORNEY AT LAW.

Submitted January 18, 1995—Decided March 31, 1995.

*Robyn M. Hill,* Chief Counsel, submitted a recommendation for discipline on behalf of Disciplinary Review Board.

*Maressa, Goldstein, Birsner, Patterson, Drinkwater & Oddo,* attorneys for respondent.

PER CURIAM.

This disciplinary proceeding arose from a Motion for Final Discipline Based Upon a Criminal Conviction filed by the Office of Attorney Ethics (OAE) before the Disciplinary Review Board (DRB), seeking final discipline of Lawrence Magid, pursuant to

*Rule* 1:20–6(c)(2)(i). That motion was based on respondent's conviction of simple assault, in violation of *N.J.S.A.* 2C:12–1a(1).

The DRB found that respondent had engaged in unethical conduct. Four members recommended that respondent be publicly reprimanded. Two members would have imposed a private reprimand. Our independent review of the record leads us to accept the DRB's recommendation.

I

Respondent was admitted to the bar in 1969. At the time of the assault he had been an attorney with the Prosecutor's Office of Gloucester County for more than sixteen years. The DRB accurately sets forth the relevant facts in its Decision and Recommendation:

On September 28, 1993, a complaint was filed in Woodbury Heights Municipal Court charging respondent with the disorderly persons offense of assault, in violation of *N.J.S.A.* 2C:12–1a(1). The complaint charged respondent with attempting "to cause bodily injury to [K.P.], specifically by punching her in the head and face area causing a black eye, knocking her to the ground and kicking her in the neck, head, and lower back, causing other bruising". The incident in question occurred on the evening of September 25, 1993, at Badges, a private club in Woodbury Heights, frequented by law enforcement personnel. At the time of the incident, respondent was the First Assistant Prosecutor of Gloucester County. The victim, [K.P.] was also employed by the Gloucester County Prosecutor's Office and had been dating respondent for several months. As a result of this incident, respondent was discharged from his position in the prosecutor's office.

On December 7, 1993, respondent pleaded guilty to assaulting [K.P.]. The plea was taken by Superior Court Judge Robert W. Page, sitting as Municipal Court Judge for the Woodbury Heights Municipal Court.

At sentencing on February 7, 1993, Judge Page placed respondent on probation for a period of one year, fined him $250, and administered a $50 violent crime penalty. As conditions of probation, Judge Page required that respondent have no contact with [K.P.] and be responsible for any medical expenses incurred by her. He also directed respondent to continue treatment with his psychiatrist and remain drug- and alcohol-free during the course of his probation.

[Citations to Exhibits omitted].

II

A criminal conviction is conclusive evidence of guilt in a disciplinary proceeding. *R.* 1:20–6(c)(1). The sole issue to be

determined is the extent of discipline to be imposed. *R.* 1:20–6(c)(2)(ii); *In re Lunetta,* 118 *N.J.* 443, 445, 572 *A.2d* 586 (1989); *In re Goldberg,* 105 *N.J.* 278, 280, 520 *A.2d* 1147 (1987); *In re Tuso,* 104 *N.J.* 59, 61, 514 *A.2d* 1311 (1986). In determining appropriate discipline, we consider the interests of the public, the bar, and the respondent. *In re Litwin,* 104 *N.J.* 362, 365, 517 *A.2d* 378 (1986); *In re Mischlich,* 60 *N.J.* 590, 593, 292 *A.2d* 23 (1977). The appropriate discipline depends on many factors, including the "nature and severity of the crime, whether the crime is related to the practice of law, and any mitigating factors such as respondent's reputation, his prior trustworthy conduct, and general good conduct." *In re Lunetta, supra,* 118 *N.J.* at 445, 446, 572 *A.2d* 586; *In re Kushner,* 101 *N.J.* 397, 400–01, 502 *A.2d* 32 (1986). Although we do not make an independent examination of the underlying facts to ascertain guilt, we do consider them relevant to the nature and extent of discipline to be imposed. *In re Goldberg, supra,* 105 *N.J.* at 280, 520 *A.2d* 1147; *In re Rosen,* 88 *N.J.* 1, 438 *A.2d* 316 (1981).

### III

Respondent's conviction of the disorderly persons offense of simple assault is clear and convincing evidence that he has violated *RPC* 8.4(b) (by committing a criminal act that reflects adversely on his honesty, trustworthiness, or fitness as a lawyer). The primary purpose of discipline is not to punish the attorney but to preserve the confidence of the public in the bar. We judge each case on its own facts. *In re Kushner, supra,* 101 *N.J.* at 400, 502 *A.2d* 32.

That respondent's misconduct did not directly involve the practice of law or a client is of little moment. It is well-established that the private conduct of attorneys may be the subject of public discipline. *In re Bock,* 128 *N.J.* 270, 274, 607 *A.2d* 1307 (1992). The reason for that rule is

not a desire to supervise the private lives of attorneys but rather that the character of a man is single and hence misconduct revealing a deficiency is not less

compelling because the attorney was not wearing his professional mantle at the time. Private misconduct and professional misconduct differ only in the intensity with which they reflect upon fitness at the bar. This is not to say that a court should view in some prissy way the personal affairs of its officers, but rather that if misbehavior persuades a man of normal sensibilities that the attorney lacks capacity to discharge his professional duties with honor and integrity, the public must be protected from him.

[*In re Mattera,* 34 *N.J.* 259, 264, 168 *A.*2d 38 (1961).]

## IV

Both this case and *In re Principato,* 139 *N.J.* 456, 655 *A.*2d 920 (1995), also decided today, involve acts of domestic violence. The national spotlight is focused on domestic violence. Between three and four million women each year are battered by husbands, partners, and boyfriends. *Domestic Violence: Not Just A Family Matter: Hearing Before the Subcomm. on Crime and Criminal Justice of the House Comm. on the Judiciary,* 103rd Cong., 2nd Sess. (June 30, 1994) (statement of Senator Joseph Biden, Jr.). The New Jersey Legislature has found that

domestic violence is a serious crime against society; that there are thousands of persons in this State who are regularly beaten, tortured and in some cases even killed by their spouses or cohabitants; that a significant number of women who are assaulted are pregnant; that victims of domestic violence come from all social and economic backgrounds and ethnic groups; that there is a positive correlation between spousal abuse and child abuse; and that children, even when they are not themselves physically assaulted, suffer deep and lasting emotional effects from exposure to domestic violence. It is therefore, the intent of the Legislature to assure the victims of domestic violence the maximum protection from abuse the law can provide.

[*N.J.S.A.* 2C:25–18].

Based on those findings, the Legislature enacted one of the toughest domestic violence laws in the nation. *N.J.S.A.* 2C:25–17 to –33. During the last decade the number of complaints filed in New Jersey courts has increased from 13,842 in fiscal year 1984 to 55,639 in 1994, an increase of 302 percent. Dana Coleman, *Domestic violence charges explode by 302% in decade,* New Jersey Lawyer, Feb. 13, 1995, at 1 (citing the Administrative Office of the Courts).

V

We have not yet addressed the appropriate discipline to be imposed on an attorney convicted of an act of domestic violence. There are few reported attorney ethics cases that involve acts of domestic violence. *In re Nevill,* 39 *Cal.*3d 729, 217 *Cal.Rptr.* 841, 704 *P.*2d 1332 (1985) (disbarring attorney who was convicted of voluntary manslaughter of his wife whom he shot ten times); *In re Knight,* 883 *P.*2d 1055 (Colo.1994) (holding that attorney's conviction of third-degree assault of his wife that arose from three days of severe beatings warranted six-month suspension); *In re Wallace,* 837 *P.*2d 1223 (Colo.1992) (imposing three-month suspension from practice of law on attorney who assaulted his girlfriend more than once and who on one occasion entered plea of guilty to assault); *In re Walker,* 597 *N.E.*2d 1271 (Ind.1992) (imposing six-month suspension on part-time prosecutor for physically assaulting his female companion and her daughter); *In re Runyon,* 491 *N.E.*2d 189 (Ind.1986) (disbarring attorney who forced entry into former wife's apartment, struck former wife with club, held her at gunpoint and who additionally was convicted of three felony counts of possession of unregistered firearms); *Committee on Professional Ethics and Conduct of the Iowa State Bar Association v. Patterson,* 369 *N.W.*2d 798 (Iowa 1985) (imposing three-month suspension from practice of law on attorney convicted of assault for severely beating his girlfriend for two hours while her four-year-old son was at home and aware of the assault).

Respondent's assault was an isolated incident on an otherwise unblemished professional record. Unlike *Nevill, Knight* and *Wallace,* there is no pattern of abusive behavior. And unlike *Wallace, Runyon* and *Patterson,* the actual assault lasted for a very short period of time. Moreover, the intense negative publicity has drastically affected respondent's career. As a result of this incident, respondent lost his long-term position in the Prosecutor's Office. Other mitigating factors also existed at the time of the assault, such as respondent's son's critical illness and his troubled

relationship with K.P. However, those mitigating factors neither excuse the attack nor obviate the necessity for public discipline.

Acts of violence are condemned in our society. As we stated in *In re Principato, supra*, 139 *N.J.* 456, 461, 655 *A.*2d 920, 922, "Unlike many other 'victimless' disorderly persons offenses, domestic violence offenses always involve victims, often-times vulnerable and defenseless." The Legislature was particularly concerned that police and judicial personnel be trained "in the procedures and enforcement of this act, and about the social and psychological context in which domestic violence occurs." *N.J.S.A.* 2C:25–18. It is therefore important that victims of domestic violence understand that prosecutors, as members of law enforcement, are sensitive to their problems. As a prosecutor respondent must combat acts of domestic violence, not commit them. This "incident calls into question his ability to zealously prosecute or effectively work with the victims of such crimes." *In re Walker, supra*, 597 *N.E.*2d at 1271 (Ind.1992).

Attorneys who hold public office are invested with a public trust and are thereby more visible to the public. Such attorneys are held to the highest of standards. "Respondent's conduct must be viewed from the perspective of an informed and concerned private citizens and be judged in the context of whether the image of the bar would be diminished if such conduct were not publicly disapproved." *In re McLaughlin*, 105 *N.J.* 457, 461, 522 *A.*2d 999 (1987) (citation omitted).

Respondent's conduct was a serious violation of *RPC* 8.4(b). But for the fact that we have not previously addressed the appropriate discipline to be imposed on an attorney who is convicted of an act of domestic violence, and that respondent did not engage in a pattern of abusive behavior, respondent's discipline would be greater than the public reprimand we hereby impose. We caution members of the bar, however, that the Court in the future will ordinarily suspend an attorney who is convicted of an act of domestic violence.

Respondent shall reimburse the Disciplinary Oversight Committee for appropriate administrative costs.

For public reprimand—Chief Justice WILENTZ and Justices HANDLER, POLLOCK, O'HERN, GARIBALDI, STEIN, and COLEMAN—7.

*Opposed*—None.

## ORDER

It is ORDERED that **LAWRENCE MAGID** of **WOODBURY,** who was admitted to the bar of this State in 1969, is hereby publicly reprimanded; and it is further

ORDERED that the entire record of this matter be made a permanent part of respondent's file as an attorney at law of this State; and it is further

ORDERED that respondent reimburse the Disciplinary Oversight Committee for appropriate administrative costs incurred in the prosecution of this matter.