655 A.2d 920

IN THE MATTER OF SALVATORE PRINCIPATO,
AN ATTORNEY AT LAW.

Submitted January 18, 1995—Decided March 31, 1995.

*Robyn M. Hill,* Chief Counsel, submitted a recommendation for discipline on behalf of Disciplinary Review Board.

*Saverio R. Principato* submitted a letter in lieu of brief on behalf of respondent.

458 

PER CURIAM.

This disciplinary proceeding arose from a Motion for Final Discipline Based Upon a Criminal Conviction filed by the Office of Attorney Ethics (OAE) before the Disciplinary Review Board (DRB), seeking final discipline of Salvatore Principato, pursuant to *Rule* 1:20–6(c)(2)(i). That motion was based on respondent's conviction of simple assault, in violation of *N.J.S.A.* 2C:12–1a(1).

The DRB found that respondent had engaged in unethical conduct, and recommended that respondent be privately reprimanded. Our independent review of the record leads us to conclude that respondent has been guilty of unethical conduct. However, we believe that a public reprimand more appropriately reflects the seriousness of respondent's misconduct.

I

Respondent was admitted to the bar in 1983. Prior to this present incident, he had an unblemished professional career. On February 14, 1992, a former client, J.M., filed a complaint against respondent in Haddon Township Municipal Court, charging him with simple assault, a disorderly persons offense. Respondent was tried and found guilty as charged. He was fined $200, assessed $25 in court costs and directed to pay a $50 violent crimes penalty.

In August of 1992 a representative of SOLACE (Services for Victims of Domestic Violence) informed the OAE of respondent's conviction. The OAE initiated a review that resulted in the filing of the Motion for Final Discipline. While the OAE review was ongoing, J.M. on February 8, 1993 filed with the District IV Ethics Committee an ethics grievance against respondent, alleging in addition to the criminal conviction respondent's ethical impropriety in having represented her in a matrimonial action and commencing an affair with her during that representation. The OAE did not conduct an investigation of the allegations contained in J.M.'s grievance but filed the Motion for Final Discipline only on the basis of respondent's criminal conviction for simple assault.

Thus, our inquiry and examination is limited to the facts underlying that criminal conviction.

On February 1990, J.M. was referred to respondent by a battered women's shelter for advice on filing a domestic violence complaint against her then husband. J.M. decided not to file the complaint. She had no further contact with respondent until approximately one year later when she contacted respondent concerning a problem she was having at work. Respondent gave J.M. advice that he characterized as "a common sense approach and ... not ... legal advice per se."

Subsequently, a social relationship, which evolved into a sexual relationship, developed between respondent and J.M. On April 11, 1991, J.M. telephoned respondent. In hysterics, she related that her husband had taken her daughter and run off. Although respondent realized the impropriety of maintaining both a sexual and professional relationship with J.M., he indicated "my normal protective instincts kind of kicked in and I wanted to help her." Respondent accepted a retainer of $2,500 on April 19, 1991 and represented J.M. in custody and divorce proceedings. Respondent acknowledged that he continued seeing J.M. on an intimate basis through July 1991.

On August 2, 1991, respondent went to J.M.'s home. There, respondent admitted to yelling and using profanity. The Haddon Township Municipal Court found in addition that respondent overturned the mattress on which J.M. was sitting and, with J.M. pinned behind the mattress, "Mr. Principato lost control of himself, possibly because she was ending this relationship.... [H]e began to pummel her against the mattress, he never hit her skin directly, but he did pummel the mattress forcefully at least 10 or 15 times ... the matter lasted at least 10 seconds." The court found that although J.M. did not sustain serious injuries, she was in fear for her life, suffered pain, and suffered a scratch on her arm.

Respondent remained attorney of record for J.M.'s divorce action until the case was taken over by her new attorney in

November 1991. However, respondent apparently took no further action on behalf of J.M. after August 2, 1991.

## II

A criminal conviction is conclusive evidence of guilt in a disciplinary proceeding. *R.* 1:20–6(c)(1). Therefore, respondent's conviction of the disorderly persons offense of simple assault is clear and convincing evidence that he has violated *RPC* 8.4(b) (by committing a criminal act that reflects adversely on his honesty, trustworthiness, or fitness as a lawyer). The sole issue to be determined is the extent of discipline to be imposed. *R.* 1:20–6(c)(2)(ii); *In re Lunetta,* 118 *N.J.* 443, 445, 572 *A.*2d 586 (1989); *In re Goldberg,* 105 *N.J.* 278, 280, 520 *A.*2d 1147 (1987). In determining appropriate discipline, we consider the interests of the public, the bar, and the respondent. *In re Litwin,* 104 *N.J.* 362, 365, 517 *A.*2d 378 (1986). The primary purpose of discipline is not to punish the attorney but to preserve the confidence of the public in the bar. The appropriate discipline depends on many factors, including the "nature and severity of the crime, whether the crime is related to the practice of law, and any mitigating factors such as respondent's reputation, his prior trustworthy conduct, and general good conduct." *In re Lunetta, supra,* 118 *N.J.* at 445, 446, 572 *A.*2d 586; *In re Kushner,* 101 *N.J.* 397, 400–01, 502 *A.*2d 32 (1986).

## III

Although the assault itself was not related to respondent's legal practice, respondent assaulted his client. An attorney in his relations with a client is bound to the highest degree of fidelity and good faith. To the public he is a lawyer whether he acts in a representative capacity or otherwise. *In re Gavel,* 22 *N.J.* 248, 265, 125 *A.*2d 696 (1956). Public policy requires strict adherence to that rule. The fact that respondent was involved with his client in a sexual relationship exacerbates the problem. We have warned attorneys that sexual relationships with clients jeopardize

the attorney-client relationship and have the strong potential to involve the attorney in unethical behavior. *In re Liebowitz,* 104 *N.J.* 175, 179, 516 *A.*2d 246 (1985). In that case we held that sexual misconduct with an assigned client warranted a public reprimand.

For the first time in this case and in *In re Magid,* 139 *N.J.* 449, 655 *A.*2d 916 (1995), also decided today, we address the appropriate discipline to be imposed on an attorney who is convicted of domestic violence. In enacting the Prevention of Domestic Violence Act of 1991, *N.J.S.A.* 2C:25–17 to –33, the Legislature recognized that "domestic violence is a serious crime against society" that affects people "from all social and economic backgrounds and ethnic groups." *N.J.S.A.* 2C:25–18. The policy of New Jersey is "that violent behavior will not be excused or tolerated." *N.J.S.A.* 2C:25–18. Unlike many other "victimless" disorderly persons offenses, domestic violence offenses always involve victims, often-times vulnerable and defenseless. The public must be assured that the legal profession is concerned about domestic violence.

## IV

To be admitted to the bar, an applicant "must possess a certain set of traits—honesty and truthfulness, trustworthiness and reliability, and a professional commitment to the judicial process and the administration of justice." *In re Matthews,* 94 *N.J.* 59, 77, 462 *A.*2d 165 (1983). We described those traits as the fundamental norms that control the professional and personal behavior of attorneys. *Ibid.* Acts of domestic violence violate those fundamental norms.

There are few reported attorney ethics cases that involve acts of domestic violence. *In re Nevill,* 39 *Cal.*3d 729, 217 *Cal.Rptr.* 841, 704 *P.*2d 1332 (1985) (disbarring attorney who was convicted of voluntary manslaughter of his wife whom he shot ten times); *In re Knight,* 883 *P.*2d 1055 (Colo.1994) (holding that attorney's conviction of third-degree assault of his wife that arose from three days

of severe beatings warranted six-month suspension); *In re Wallace*, 837 *P.*2d 1223 (Colo.1992) (imposing three-month suspension from practice of law on attorney who assaulted his girlfriend more than once and who on occasion entered plea of guilty to assault); *In re Walker*, 597 *N.E.*2d 1271 (Ind.1992) (imposing six-month suspension on part-time prosecutor for physically assaulting his former client/girlfriend and her daughter); *In re Runyon*, 491 *N.E.*2d 189 (Ind.1986) (disbarring attorney who forced entry into former wife's apartment, struck former wife with club, held her at gunpoint and who additionally was convicted of three felony counts of possession of unregistered firearms); *Committee on Professional Ethics and Conduct of the Iowa State Bar Association v. Patterson*, 369 *N.W.*2d 798 (Iowa 1985) (imposing three-month suspension from practice of law on attorney convicted of assault for severely beating his girlfriend for two hours while her four-year-old son was at home and aware of assault).

Respondents in the those cases all committed acts of domestic violence that resulted in serious bodily injury to the victim. Additionally, in *Nevill, Knight* and *Wallace,* there was a pattern of abusive behavior. Respondent's actions did not result in any physical injury to J.M., other than a scratch on her finger. Moreover, both the municipal court and the DRB found several mitigating factors. We agree. The municipal court observed that no serious harm was done; that respondent had no prior history of misconduct; that "the character and attitude of the defendant indicate he is unlikely to commit another offense"; and that there was no indication that respondent's representation of J.M. was adversely affected by their personal relationship. In fact, according to J.M.'s own testimony, respondent's legal representation of her was excellent.

The DRB in its Decision and Recommendation also acknowledged that there were mitigating factors:

First, respondent recognized that he used poor judgment in becoming personally involved with [J.M.]. He acknowledged his wrongdoing in assaulting [J.M.] and was contrite for what he had done. Second, his conduct was aberrational and is highly unlikely to recur. The Board is also mindful of the impact that the negative

publicity generated by respondent's case has had on his career (*See, e.g.,* exhibit C to OAE's brief). Moreover, the incident occurred nearly three years ago. The Board has taken these factors into account and has further considered respondent's previous unblemished ethics record.

New Jersey has a strong public policy against domestic violence. Respondent's assault on J.M., a particularly vulnerable client, referred to him by a battered women's shelter, was a serious violation of *RPC* 8.4(b). But for the fact that we have not previously addressed the appropriate discipline to be imposed on a lawyer who is convicted of an act of domestic violence, and that respondent's offense was an isolated incident and did not present a pattern of abusive conduct, respondent's discipline would be greater than the public reprimand we hereby impose. We caution members of the bar, however, that the Court in the future will ordinarily suspend an attorney who is convicted of an act of domestic violence.

We direct that respondent reimburse the Disciplinary Oversight Committee for administrative costs.

*For public reprimand*—Chief Justice WILENTZ, and Justices HANDLER, POLLOCK, O'HERN, GARIBALDI, STEIN and COLEMAN—7.

*Opposed*—None.

## ORDER

It is ORDERED that **SALVATORE PRINCIPATO** of **CAMDEN,** who was admitted to the bar of this State in 1983, is hereby publicly reprimanded; and it is further

ORDERED that the entire record of this matter be made a permanent part of respondent's file as an attorney at law of this State; and it is further

ORDERED that respondent reimburse the Disciplinary Oversight Committee for appropriate administrative costs incurred in the prosecution of this matter.