673 A.2d 800

IN THE MATTER OF OLIVIA C. HOWARD,
AN ATTORNEY AT LAW.

Argued January 29, 1996—Decided April 12, 1996.

*Richard J. Engelhardt,* First Assistant Ethics Counsel, argued the cause on behalf of Office of Attorney Ethics.

*Alan Dexter Bowman,* argued the cause for respondent.

PER CURIAM.

This disciplinary proceeding arose from a Motion for Final Discipline Based Upon a Criminal Conviction filed by the Office of Attorney Ethics (OAE) before the Disciplinary Review Board (DRB or Board), seeking discipline of Olivia C. Howard pursuant to *Rule* 1:20–6(c)(2)(i). Respondent was convicted of death by auto in violation of *N.J.S.A.* 2C:11–5, following an incident in which she struck and killed her husband with her automobile. The DRB recommended that no discipline be imposed in this case. We granted the OAE's petition for review, and reach a different conclusion.

I

Respondent was admitted to the New Jersey bar in 1981. Her husband, Frank Howard, also a member of the bar, was a police officer in Newark who maintained a part-time legal practice. The two shared "staff, space, resources and income" at their law office in East Orange, New Jersey.

We rely principally on the DRB's decision for a description of the events leading up to Mr. Howard's death. On the afternoon of July 3, 1989, Olivia and Frank Howard met to discuss some of their financial difficulties. With her husband in the passenger seat, respondent drove to a construction site where she parked her car so they could talk. An argument ensued, leading Mr. Howard to put the gear shift into reverse, exit the vehicle and walk away. When respondent backed up the car, the passenger door "flew open" and became caught in a fence surrounding the construction site. The top hinge of the car door broke, causing the door to drag as respondent drove.

Respondent then put the car in forward and drove alongside her husband, following his pace. As she drove, she pleaded with him to assist her in securing the door. He ignored her pleas and continued walking. After following Mr. Howard the wrong way down two one-way streets, respondent finally pulled into the driveway of a health clinic and came to a stop when her husband approached the front of the car. She exited the car and once again sought his assistance. The two were unable to resolve their dispute at that time. Respondent then "got back into the car ... hit the gas ... and reached for the car door at the same time...." When she felt something under the car, she "slammed on the brakes with both of [her] feet...." Mr. Howard was wedged underneath the car. He died later that day as a result of his injuries.

A Bergen County grand jury charged respondent with murder. At trial, respondent testified that she never intended to strike Frank Howard with her car. She maintained that her husband stepped in front of the car as she was accelerating, and that she

did not see him because she was reaching over in an attempt to close the damaged passenger door. A jury acquitted respondent of murder, but found her guilty of the lesser included offense of death by auto in violation of *N.J.S.A.* 2C:11–5.[1] The trial judge sentenced respondent to five years probation, 500 hours of community service, $17,500 in fines and penalties, and revoked her driving privileges for two years. The Appellate Division affirmed her conviction.

On August 2, 1994, the Office of Attorney Ethics filed a motion for final discipline with the DRB, recommending a term of suspension. After conducting a hearing, the DRB unanimously dismissed the OAE's motion. The Board reasoned that respondent's criminal offense did not relate to the practice of law, and did not adversely reflect on her honesty, trustworthiness, or fitness as a lawyer. The Board then concluded that it could not "impose discipline for an offense that the disciplinary system was not established to deter." We granted the OAE's petition for review of the DRB's decision.

## II

"A criminal conviction is conclusive evidence of guilt in a disciplinary proceeding." *In re Magid,* 139 *N.J.* 449, 451, 655 *A.*2d 916 (1995); *In re Pleva,* 106 *N.J.* 637, 639, 525 *A.*2d 1104 (1987). While we will not conduct an independent evaluation of the evidence to ascertain respondent's guilt, we do consider the underlying facts to determine the appropriate level of discipline to be imposed. *Magid, supra,* 139 *N.J.* at 452, 655 *A.*2d 916.

The goal in a disciplinary proceeding is to protect the public, not to punish attorneys. *In re Rutledge,* 101 *N.J.* 493, 498, 502 *A.*2d 569 (1986). "[T]he principal reason for discipline is to

---

[1] At that time, *N.J.S.A.* 2C:11–5 provided, in pertinent part, that "[c]riminal homicide constitutes death by auto or vessel when it is caused by driving a vehicle or vessel recklessly.... Death by auto or vessel is a crime of the third degree...."

preserve the confidence of the public in the integrity and trustworthiness of lawyers in general." *In re Wilson*, 81 *N.J.* 451, 456, 409 *A.*2d 1153 (1979). Punishment, in contrast, is within the province of the criminal courts. Thus, even in victimless crimes, we have found it necessary to suspend attorneys who have engaged in conduct that transgressed societal norms established by our Legislature. *In re Schaffer*, 140 *N.J.* 148, 161, 657 *A.*2d 871 (1995).

The "privilege to practice law is founded on high moral character." *Id.* at 155, 657 *A.*2d 871. Any misconduct, whether professional or private, that reveals a lack of good character essential for an attorney constitutes a basis for discipline. *Magid, supra,* 139 *N.J.* at 452, 655 *A.*2d 916; *In re Bock*, 128 *N.J.* 270, 274, 607 *A.*2d 1307 (1992). An attorney's obligation to maintain a high standard of conduct has been deemed to apply to activities that may not directly involve the practice of law or affect his or her clients. *Schaffer, supra,* 140 *N.J.* at 156, 657 *A.*2d 871 (citations omitted) (imposing discipline on attorney who admitted to possessing and being under the influence of cocaine). The rationale for this rule is

> not a desire to supervise the private lives of attorneys but rather that the character of a [person] is single and hence misconduct revealing a deficiency is not less compelling because the attorney was not wearing his [or her] professional mantle at the time.... [I]f misbehavior persuades a [person] of normal sensibilities that the attorney lacks capacity to discharge his [or her] professional duties with honor and integrity, the public must be protected from [such an attorney].
>
> [*Magid, supra,* 139 *N.J.* at 452–53, 655 *A.*2d 916 (quoting *In re Mattera*, 34 *N.J.* 259, 264, 168 *A.*2d 38 (1961)).]

In *Magid, supra,* the OAE brought disciplinary proceedings against an attorney who was convicted of simple assault arising out of an incident of domestic violence. Although respondent's conduct was unrelated to the practice of law and did not directly affect a client, we stated that the lawyer's actions "must be viewed from the perspective of an informed and concerned private citizen[ ] and be judged in the context of whether the image of the bar would be diminished if such conduct were not publicly disapproved." *Id.* at 455, 655 *A.*2d 916 (citing *In re McLaughlin*, 105 *N.J.* 457, 461, 522 *A.*2d 999 (1987)). We publicly reprimanded

respondent to advance this policy and to reinforce the Legislature's strong condemnation of domestic violence offenses. In addition, we noted that in the future, we will ordinarily suspend attorneys who are convicted of acts of domestic violence. *Ibid.* Similarly, in disbarring an attorney who pled guilty to charges of criminal sexual contact with children, we reasoned that a "less severe discipline would undermine the gravity of the ethics offenses, the seriousness of the crimes, and the confidence reposed by the public on the members of the legal profession and on the judicial system." *In re X,* 120 *N.J.* 459, 464, 577 *A.*2d 139 (1990).

 The counterargument against basing our disciplinary decision on cases like *Magid, Schaffer* and *In re X* is that the crimes in those cases involved intentional conduct wl.ile the death of Olivia Howard's husband was the result of unintentional conduct. Although respondent characterizes this tragedy as an accident, she was convicted of "criminal homicide" caused by driving a vehicle recklessly. *N.J.S.A.* 2C:11–5. Under this statute, a person acts recklessly when she consciously disregards a substantial and unjustifiable risk that her driving will result in someone's death. The disputed conduct must involve a "gross deviation from the standard of conduct that a reasonable person would observe in the actor's situation." *N.J.S.A.* 2C:2–2b(3). Thus, despite her contention to the contrary, the jury found that respondent disregarded a substantial and unjustifiable risk that her conduct would kill her husband.

The Legislature has recently upgraded *N.J.S.A.* 2C:11–5 to make a violation of that statute a second degree offense with a presumption of imprisonment of five to ten years. First and second degree offenses are "serious crimes" authorizing the temporary and immediate suspension of the offending attorney. *R.* 1:20–13(b)(2). It would be anomalous if an offense of such gravity, exhibiting a reckless indifference to human life, were to merit no discipline at all when the possession of a small quantity of drugs has resulted in either a suspension or a reprimand. *See Schaffer, supra,* 140 *N.J.* at 161, 657 *A.*2d 871; *In re McLaughlin,* 105 *N.J.*

457, 462, 522 *A*.2d 999 (1987). We believe that "the image of the bar would be diminished if such conduct were not publicly disapproved." *Magid, supra,* 139 *N.J.* at 455, 655 *A*.2d 916 (citing *McLaughlin, supra,* 105 *N.J.* at 461, 522 *A*.2d 999). To comply with these principles, discipline is warranted in this case.

### III

Other jurisdictions have disciplined attorneys who committed vehicular crimes. In *People v. Fahselt,* 807 *P*.2d 586 (Colo.1991), the Colorado Supreme Court publicly censured an attorney who was convicted of vehicular assault, driving under the influence of alcohol, failing to maintain liability insurance and reckless driving. In dissent, Justice Quinn stated that a one year suspension would have been a more appropriate sanction because a "lawyer is an officer of the court and is obliged to conduct his personal and professional life in a manner that will not bring the legal profession into disrepute." *Id.* at 589 (Quinn, J., dissenting). Similarly, in *Kentucky Bar Association v. Jones,* 759 *S.W*.2d 61 (Ky.1988), disciplinary proceedings were brought against an attorney who, while driving under the influence of alcohol, killed two people when his car collided with a tractor-trailer that was parked on the emergency strip of a highway. After he was convicted of reckless homicide, the Supreme Court of Kentucky suspended the attorney for two years. It reasoned that "an attorney is an officer of the court and it is his duty and it is his responsibility to conduct his personal *and* professional life in a manner as to be above reproach." *Id.* at 63. Other than a person's own confidant, the court noted that no one occupies a closer relationship to the general public than members of the legal profession. *Ibid.* (citation omitted). *See also In re Curran,* 115 *Wash*.2d 747, 801 *P*.2d 962 (1990) (holding that presumptive sanction for two counts of vehicular homicide is a two year suspension); *Office of Disciplinary Counsel v. Michaels,* 38 *Ohio St*.3d 248, 527 *N.E*.2d 299 (1988) (suspending attorney for eighteen months and requiring absten-

tion from use of alcohol for five years after his drunk and reckless driving caused fatal automobile accident).

## IV

■ None of the offenses in these other jurisdictions involved honesty, trustworthiness or fitness to practice law—traits that are the ordinary predicate to the imposition of discipline. Yet in these jurisdictions, public discipline was imposed. There is no indication that alcohol played a role in Olivia Howard's conduct. Her recklessness did, however, result in the death of another human being and that recklessness brings substantial disrepute to the bar generally. We believe that the discipline imposed should reflect the seriousness of the societal norms transgressed. *See Rule* 1:20–13(b)(2) (stating that "serious crimes" ordinarily call for the automatic temporary suspension of the offending attorney). At the time of respondent's offense, the Legislature had not yet made vehicular homicide a second degree crime. Hence, we are satisfied that a short period of suspension is the appropriate discipline in this case.

Accordingly, we direct that respondent be suspended from the practice of law for three months for the ethics violations evidenced by her conviction of vehicular homicide. Longer suspensions will be called for when alcohol plays an aggravating role in a vehicular homicide case. Respondent shall reimburse the Disciplinary Oversight Committee for appropriate administrative costs.

*For 3–month suspension*—Chief Justice WILENTZ, and Justices HANDLER, POLLOCK, O'HERN, GARIBALDI, STEIN and COLEMAN—7.

*Opposed*—None.

## ORDER

It is ORDERED that **OLIVIA C. HOWARD** of **EAST ORANGE,** who was admitted to the bar of this State in 1981, is

hereby suspended from the practice of law for a period of three months and until the further Order of the Court, effective May 1, 1996; and it is further

ORDERED that respondent be restrained and enjoined from practicing law during the period of her suspension and that she comply with *Rule* 1:20-20, which governs suspended attorneys; and it is further

ORDERED that respondent reimburse the Disciplinary Oversight Committee for appropriate administrative costs incurred in the prosecution of this matter.