696 A.2d 8

IN THE MATTER OF PHILIP V. TORONTO,
AN ATTORNEY AT LAW.

Argued April 28, 1997—Decided July 11, 1997.

*Richard J. Engelhardt,* Assistant Ethics Counsel, argued the cause on behalf of the Office of Attorney Ethics.

*Raymond F. Flood* argued the cause for respondent (*Flood & Basile,* attorneys).

PER CURIAM.

This disciplinary proceeding arises from a Motion for Final Discipline Based Upon a Criminal Conviction filed by the Office of Attorney Ethics ("OAE") before the Disciplinary Review Board ("DRB"). The OAE moves for final discipline of Philip Toronto ("respondent") pursuant to *Rule* 1:20–13(c)(2). It bases the motion on respondent's guilty plea to simple assault on his wife, contrary to *N.J.S.A.* 2C:12–1a(1). The conviction constitutes a violation of *RPC* 8.4(b), which states that it is professional misconduct for a lawyer to "commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects."

A five-member majority of the DRB voted to reprimand respondent because he had committed the underlying acts before we rendered our decisions in *In re Magid,* 139 *N.J.* 449, 655 *A.*2d 916 (1995), and *In re Principato,* 139 *N.J.* 456, 655 *A.*2d 920 (1995). Those decisions state that attorneys who are convicted of domestic violence ordinarily will be subject to suspension.

Four members of the DRB, however, voted for a three-month suspension. On the facts of this case, we conclude that a three-month suspension is appropriate.

I.

From the record, the following facts emerge. Respondent was admitted to the bar in 1982. On May 13, 1994, respondent allegedly attempted to strangle his ex-wife, Consuela, with a telephone cord. On May 26, 1994, the Bergen County Grand Jury issued a four-count indictment, charging respondent with second-degree aggravated assault, in violation of *N.J.S.A.* 2C:12–1b(1); third-degree aggravated assault with a deadly weapon, in violation of *N.J.S.A.* 2C:12–1b(2); third-degree possession of a weapon for an unlawful purpose, in violation of *N.J.S.A.* 2C:39–4d; and fourth-degree possession of an unlawful weapon, in violation of *N.J.S.A.* 2C:39–5d.

On July 20, 1995, respondent pleaded guilty to simple assault. When entering the plea, respondent admitted that he and Consuela "were involved in an argument, during the course of which [he] push[ed her] away from [him]." The court sentenced respondent to one-year probation, fifty hours of community service and twenty-six sessions of domestic violence counseling. It also ordered him not to have contact with Consuela.

In November 1995, the OAE filed a Motion for Final Discipline with the DRB. Respondent joined in the OAE's recommendation of a reprimand. Accordingly, on September 16, 1996, the DRB recommended a reprimand. It reasoned that because *Magid* and *Principato* were decided ten months after respondent's assault, he was not on notice that he could be subject to suspension. In so concluding, the DRB noted that "[r]espondent offered as a mitigating factor his longstanding reputation, void of any prior ethics or criminal history."

While the present disciplinary action was pending before the DRB, however, the OAE was investigating another complaint against respondent involving a young woman ("complainant"), with whom respondent developed a romantic relationship. According to the complainant, respondent sexually abused her and infected her with a sexually transmitted disease. She also alleges that he violated tax laws by paying her cash for part-time secretarial

services in his law practice. During questioning by a District Ethics Committee ("DEC") investigator, respondent initially denied engaging in sexual relations with complainant and having employed her. During the hearing, he responded evasively about his answer to the complaint. The DEC found that the complainant was more credible than respondent.

On November 18, 1996, the DRB concluded that the record did not support the sexual-misconduct and tax-violation contentions. The DRB also found, however, that respondent had violated *RPC* 8.4(c), which states that it is professional misconduct for a lawyer to "engage in conduct involving dishonesty, fraud, deceit or misrepresentation." Respondent violated that rule when he misrepresented to the DEC his sexual and employment relations with the complainant. In March 1997, we reprimanded respondent for that offense. Before this Court, the OAE urges that, considering this additional unethical behavior, Toronto should be suspended for three to six months in the current proceeding.

## II.

Generally, a criminal conviction is conclusive evidence of guilt in a disciplinary proceeding. *R.* 1:20–13(c)(1); *Magid, supra,* 139 *N.J.* at 451, 655 *A.*2d 916; *Principato, supra,* 139 *N.J.* at 460, 655 *A.*2d 920. Respondent's conviction for simple assault, therefore, establishes his violation of *RPC* 8.4(b). Pursuant to *RPC* 8.4(b), it is professional misconduct for an attorney to "commit a criminal act that reflects adversely on his honesty, trustworthiness or fitness as a lawyer." Hence, the sole issue is the extent of discipline to be imposed. *R.* 1:20–13(c)(2); *Magid, supra,* 139 *N.J.* at 451–52, 655 *A.*2d 916; *Principato, supra,* 139 *N.J.* at 460, 655 *A.*2d 920; *In re Lunetta,* 118 *N.J.* 443, 445, 572 *A.*2d 586 (1989).

As we have indicated previously, "[i]n determining appropriate discipline, we consider the interests of the public, the bar, and the respondent. The primary purpose of discipline is not to punish the attorney but to preserve the confidence of the public in the bar." *Principato, supra,* 139 *N.J.* at 460, 655 *A.*2d 920

(citations omitted). Fashioning the appropriate discipline involves a consideration of many factors, including the "nature and severity of the crime, whether the crime is related to the practice of law, and any mitigating factors such as respondent's reputation, his prior trustworthy conduct, and general good conduct." *Lunetta, supra,* 118 *N.J.* at 445, 572 *A.*2d 586. Just as an attorney's prior good conduct is a mitigating factor, so too can the attorney's earlier unethical conduct be an aggravating factor. *See, e.g., In re Surgent,* 104 *N.J.* 566, 569–70, 518 *A.*2d 215 (1986) (taking into consideration previous ethical violations); *In re Krakauer,* 99 *N.J.* 476, 478–79, 493 *A.*2d 1229 (1985) (same).

"It is well-established that private conduct of attorneys may be the subject of public discipline." *Magid, supra,* 139 *N.J.* at 452, 655 *A.*2d 916 (citing *In re Bock,* 128 *N.J.* 270, 274, 607 *A.*2d 1307 (1992)). This Court, moreover, has recognized that domestic violence is a tragedy and reaffirmed society's interest in deterring it. *Id.* at 453–55, 655 *A.*2d 916; *Principato, supra,* 139 *N.J.* at 461, 655 *A.*2d 920; *see N.J.S.A.* 2C:25–18 (finding that "domestic violence is a serious crime against society").

 Recently, we publicly reprimanded two attorneys for acts of domestic violence. *Magid, supra,* 139 *N.J.* at 455, 655 *A.*2d 916 (imposing reprimand on prosecutor who was convicted of simple assault for hitting and kicking his girlfriend); *Principato, supra,* 139 *N.J.* at 463, 655 *A.*2d 920 (imposing reprimand on attorney who was convicted of simple assault for pummeling estranged girlfriend/client against mattress). In limiting the discipline to a reprimand, we stated "but for the fact that we have not previously addressed the appropriate discipline to be imposed on a lawyer who is convicted of an act of domestic violence," and that respondents did not engage in a pattern of abusive behavior, respondents' discipline would be greater. *Ibid.* In both cases, we admonished that "the Court in the future will ordinarily suspend an attorney who is convicted of an act of domestic violence." *Ibid.*

## III.

Here, the domestic violence occurred on May 13, 1994, ten months before our decisions in *Magid* and *Principato*. Although respondent's ex-wife asserts that he attempted to strangle her with a telephone cord, when he entered his guilty plea he merely stated that he pushed her away during an argument.

In recommending a reprimand, the DRB noted that "[r]espondent offered as a mitigating factor his longstanding reputation, void of any prior ethics or criminal history." The DRB also noted "the fact that respondent was not on notice that his criminal conduct would result in a term of suspension."

Were it not for respondent's other unethical behavior, we might agree with the DRB's recommendation. As stated above, however, an attorney's other unethical conduct may be an aggravating factor in determining the appropriate discipline. While the present disciplinary action was pending, respondent, in another disciplinary proceeding, misrepresented to the DEC his sexual involvement with and employment of the complainant. That disregard for the standards governing the professional conduct of lawyers cannot be ignored. A mere reprimand will not vindicate our interest in preserving public confidence in the bar.

On balance, we conclude that a three-month suspension is appropriate. Respondent shall reimburse the Disciplinary Oversight Committee for appropriate administrative costs.

*For suspension*—Chief Justice PORITZ, and Justices HANDLER, POLLOCK, O'HERN, GARIBALDI, STEIN and COLEMAN—7.

### ORDER

It is ORDERED that **PHILIP V. TORONTO** of **LODI**, who was admitted to the bar of this State in 1982, is hereby suspended from the practice of law for a period of three months, effective

August 6, 1997, and until the further Order of the Court; and it is further

ORDERED that respondent be restrained and enjoined from practicing law during the period of his suspension and that he comply with *Rule* 1:20-20, which governs suspended attorneys; and it is further

ORDERED that respondent reimburse the Disciplinary Oversight Committee for appropriate administrative costs incurred in the prosecution of this matter.