[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON PRESENTMENT FOR MISCONDUCT
 I. A.
On September 7, 1994, the Statewide Grievance Committee (hereinafter, the Committee) filed the instant presentment against the respondent, Russell Gary Small, pursuant to Practice Book § 2-41 (formerly § 28B.1)[1] seeking disciplinary CT Page 3536 action including an interim suspension, on the grounds that Mr. Small had been convicted on December 6, 1993, in the state of New York, after a jury trial, of the crimes of Criminally Negligent Homicide, and Operation of a Motor Vehicle While Impaired by Alcohol. Attorney Small was sentenced on January 25, 1994 for an indeterminate term of a maximum of four (4) years and a minimum of one and one-third (1-1/3) years for the first count and for fifteen (15) days concurrent and ordered to pay fines and charges of $505.00 for the second count. On October 12, 1994, the court,[Langenbach, J.,] placed Mr. Small on interim suspension from the practice of law in Connecticut until further order of the court.
On December 7, 1997, having served 32 months, and while on parole, Mr. Small applied for reinstatement. A hearing was first held by this court on April 15, 1998, and after the filing of briefs, oral argument was held on January 13, 1999.
The respondent argues that the interim suspension should now be terminated with this court imposing a final discipline of a three year suspension commencing October 12, 1994. He suggests two reasons for this position:
1. The crime of negligent homicide, while a felony in New York State (and therefore requiring disbarment), is not a felony in Connecticut. The equivalent crime in this state is characterized as a misdemeanor under General Statutes §14-222a which provides for a penalty of imprisonment of not more than six months or a fine of not more than $1,000.00.[2]
2. While the instant action was brought pursuant to Practice Book § 2-41, it might also have been brought pursuant to § 2-39(c) (formerly § 28A(c))[3] which requires the court to take "commensurate action" in a matter involving reciprocal discipline unless it has found that any defense has been established by clear and convincing evidence. The respondent stresses that disbarment is excessive in comparison to standards existing in this and other states.
 B.
At the hearing on April 15, 1998, the respondent testified that he had been admitted to the Connecticut, New York and Washington, D.C., Bars in 1988. He first practiced with Hyatt Legal Services in Connecticut in 1988, then with Jacoby and Meyers in New York from 1989 to 1991, and then as a solo CT Page 3537 practitioner until 1994. The subject motor vehicle accident occurred late in the evening on February 23, 1991 as Mr. Small was driving home after a party. His passenger was killed and the respondent was injured; Mr. Small's blood test results revealed a .06 blood alcohol ratio.[4] Mr. Small testified that at the time of the accident his license had already been suspended for his failure to pay prior speeding tickets. He further testified that he has never been able to recall the details of the accident.
Mr. Small's trial was held in December, 1993 and, although acquitted of the charge of manslaughter, he was, as mentioned, convicted of the charges of criminally negligent homicide and operating a motor vehicle while impaired. He was imprisoned for 32 months from January, 1994, to September, 1996, and upon his release, moved in with his parents in New York and obtained employment with Konica. He has complied with the counseling requirements for parole and still sees his psychiatrist, Dr. Evans. He does not have alcohol abuse problem; in fact at the time of the hearing, he testified that he never drank on a daily basis, had not had a drink since his release from prison and that it was his intention to abstain. He had been undergoing treatment with a psychiatrist from 1990 through 1994 for symptoms of anxiety and depression and his doctor indicated that "at no time [did he] manifest an alcohol or substance abuse problem. . . . The accident that led to his prison sentence was an aberration of his usual behavior; a regrettable one time incident."
Other than this incident, Mr. Small has never been grieved or accused of any professional misconduct.
 II. A.
"An attorney as an officer of the court in the administration of justice, is continually accountable to it for the manner in which he exercises the privilege which has been accorded him. His admission is upon the implied condition that his continued enjoyment of the right conferred is dependent upon his remaining a fit and safe person to exercise it, so that when he, by misconduct in any capacity, discloses that he has become or is an unfit or unsafe person to be entrusted with the responsibilities and obligations of an attorney, his right to continue in the enjoyment of his professional privilege may and ought to be CT Page 3538 declared forfeited. . . . Therefore, [i]f a court disciplines an attorney, it does so not to mete out punishment to an offender, but [so] that the administration of justice may be safeguarded and the courts and the public protected from the misconduct or unfitness of those who are licensed to perform the important functions of the legal profession. Doe v. Statewide GrievanceCommittee, 240 Conn. 671, 684-85, 694 A.2d 1218 (1997), quotingMassameno v. Statewide Grievance Committee, 234 Conn. 539,554-55, 663 A.2d 317 (1995)."
 1.
A presentment based on Practice Book § 2-41 requires a court to focus on the appropriate discipline to be imposed as the result of the conviction of serious crime. Subsection (c) states that this means "any felony as defined in the jurisdiction in which the attorney was convicted." To the extent that the respondent argues that the conviction should be considered otherwise because Connecticut treats the crime as a misdemeanor is unpersuasive. Our rule defines "serious crime" and, as noted, the definition is not restricted to only Connecticut felonies. Indeed, it is specifically the opposite. Moreover, even without the existing regulation, a conviction for negligent homicide would surely meet any definition of a "serious crime." This definition is explicit, however, and the conviction in New York, as a felony, surely falls within subsection (c).
 2.
Both parties agree that the provisions of Practice Book §2-39, Reciprocal Discipline, also apply to this review. As previously noted, this section requires this court to take commensurate action in imposing disciplinary action unless the respondent has established a defense by clear and convincing evidence. Our Supreme Court has held that the phrase "commensurate action" as set forth in Practice Book § 26C(c), the predecessor to § 2-39(c), "does not mean `identical action.' The trial court [has] inherent judicial power, derived from judicial responsibility for the administration of justice, to exercise sound discretion to determine what sanction to impose in light of the entire record before it." In re Weissman,203 Conn. 380, 384, 524 A.2d 1141 (1987).
Based upon this pronouncement, the respondent argues that decisions in other cases, together with Connecticut's CT Page 3539 categorization of negligent homicide as a misdemeanor, pursuant to General Statutes § 14-222a, warrants an immediate termination of his suspension. He argues that this case involves only a single instance of reckless conduct in the operation of a motor vehicle and that an unintentional violation does not demonstrate an unfitness to practice law.
The Committee does not agree with the respondent's interpretation that the accident should be viewed as an isolated incident. At the time of the accident, Mr. Small's license was suspended as a result of his failure to pay outstanding speeding tickets, for driving without an insurance card and for improper lane signaling. Mr. Small testified that he received the tickets, but for at least one year, did not respond. He was not sure whether he knew his license was suspended. Additionally, as noted above, at the time of the accident, his blood alcohol content level was .06. Accordingly, the Committee argues that the disbarment imposed by New York is appropriate and that this court should continue its suspension until New York takes more favorable action.
A review of the cases supplied by both parties indicates that the more commonly imposed discipline for attorneys involved in fatal motor vehicle accidents while driving under the influence is a suspension of two to three years. Additionally, he cites a number of cases in which the attorney was disciplined less than two years. See, e.g., Office of Disciplinary Counsel v. Michaels,38 Ohio St.3d 248, 527 N.E.2d 299 (1988) (eighteen-month suspension); Kentucky Bar Assn. v. Jones, 759 S.W.2d 61 (Ky. 1988) (two-year suspension); Matter of Disciplinary ProceedingAgainst Curran, 115 Wash.2d 747, 801 P.2d 962 (1990) (en banc) (two-year suspension); Office of Disciplinary Counsel v. Hart,70 Ohio St.3d 374, 639 N.E.2d 48 (1994) (six month suspension);People v. Fahselt, 807 P.2d 586 (Colo. 1991) (en banc) (censure). Where alcohol is not involved, short suspensions have been imposed. See, e.g., Matter of Howard, 143 N.J. 526, 673 A.2d 800
(1996) (three-month suspension); In re Alkow, 64 Ca.2d 838,415 P.2d 800 (1966) (en banc) (six-month suspension).
A two year suspension is not always the rule. In In Re Hoare,155 F.3d 937 (8th Cir. 1998), the Eighth Circuit upheld a disbarment after an attorney's conviction of the felony of aggravated reckless homicide. In that case, Attorney Hoare, a former law professor and United States Department of Justice Attorney, caused the death of a seventeen year old boy after CT Page 3540 consuming many drinks (having a .12 blood alcohol content some two and one-half hours after the accident) and driving more than two miles on the wrong side of a highway. That court discussed the disparity of disciplinary sanctions, noting that some jurisdictions, i.e., New York, provided for automatic disbarment upon the conviction of a felony. The court found that the imposition of the disbarment did not constitute an abuse of discretion and stated that "[a]ctions produce consequences; reckless actions sometimes beget tragic consequences. The consequences of Hoare's reckless actions, though unintended, were in no sense unforeseeable." Id., 941.
 B. 1.
The issue for this court, however, is not disbarment; both sides are arguing only about the length of a suspension. In ruling on the "final discipline to be imposed," this court is certainly familiar with the American Bar Associations Standards for Lawyer Sanctions ("Standards") which, while not adopted by the judges of this state, have been widely used in determining the proper sanction to impose in disciplinary actions.[5] The system balances aggravating and mitigating factors.[6]
Of particular concern to this court, perhaps more than weighing the aggravating and mitigating factors, is the duty violated by the respondent. Under Rule 8.4(2) of the Rules of Professional Conduct, it is professional misconduct for a lawyer to "[c]ommit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in otherrespects." (Emphasis supplied.) The respondent stresses that "a single instance of negligent or reckless conduct" does not mean that he is unfit to practice law. Although the facts are somewhat different,[7] the court's comments in Hoare, supra, are worth noting:
"We reject Hoare's argument that his misconduct does not reflect adversely on his fitness to practice law. Hoare is guilty of committing a felony. He elected to drive while intoxicated, drove for more than two miles on the wrong side of an interstate highway, and ended the life of an innocent young man. Upon his arrest, he refused to cooperate with police officers by forbidding them to test his blood for alcohol. Such conduct, when committed by an officer of the court, constitutes a failure to CT Page 3541 maintain personal integrity, reflects upon one's fitness to practice law, and brings the bench and the bar into disrepute. See, e.g., Matter of Horwitz, 180 Ariz. 20, 881 P.2d 352, 356
(1994) (en banc); People v. Fahselt, 807 P.2d 586, 587-88 (Colo. 1991) (en banc); Kentucky Bar Ass'n v. Jones, 759 S.W.2d 61, 63
(Ky. 1988). Offending conduct need not involve direct questions of honesty or trustworthiness, nor have an immediate relation to the daily business conducted by an attorney, in order to warrant substantial discipline. See, e.g., In re Brown, 674 So.2d 243,246 (La. 1996) ("Conviction of a crime may warrant disbarment, even though the crime was not directly connected with the practice of law.")." In re Hoare, supra, 155 F.3d 940.
The Commentary to Rule 8.4 states, in part "[a] pattern of repeated offenses, even ones of minor significance when considered separately, can indicate an indifference to legal obligation." This, unfortunately, is the situation in this case; it is not only about the tragic consequences of a traffic accident, it is also about the indifference to legal obligation and an attorney's fitness to practice law.
 2.
Returning to the section 9.22 factors, it is clear that there are only two aggravating factors that apply: (c) a pattern of misconduct and (k) illegal conduct. On the other hand, all the mitigating factors, with the exception of (6) inexperience in the practice of law, (8) physical disability, (9) mental disability or chemical dependency, (10) delay in disciplinary proceedings, and (13) remoteness of prior offenses, apply to this case. The court also notes, of course, that the accident occurred eight years ago on February 23, 1991 and that Judge Langenbach's interim order of suspension was dated October 12, 1994. Mr. Small's exhibits indicate that he does not now and did not then abuse alcohol or drugs, that he is voluntarily participating in counseling and that his psychologist believes he is fully capable of practicing law. His present employer has written that he is impressed with Mr. Small's professionalism, honesty, and integrity.
 3.
It is clear that our disciplinary sanctions are not mirror images. That does not make them unjust or unwarranted; the sentences we impose in criminal cases likewise differ. See StateCT Page 3542v. Candito, 4 Conn. App. 154, 158, 493 A.2d 250 (1985). In disciplinary procedures "courts are, as they should be, left free to act as may in each case seem best in this matter of most important concern to them and to the administration of justice."In re Peck, 88 Conn. 447, 457, 91 A. 274 (1914). The "paramount importance in attorney disciplinary matters is the protection of the court, the profession of the law and of the public against offenses of attorneys which involve their character, integrity and professional standing." (Internal quotations marks omitted.)Statewide Grievance Committee v. Shluger, supra, 230 Conn. 681.
The accident can not be viewed as a single event; it must be viewed in light of the other actions. With the exception of operating a motor vehicle with a suspended license, the other violations may not seem terribly serious; yet taken together, they demonstrate a clear disregard for the law and process which each attorney vows to uphold. Not attending to motor vehicle violations or driving with a suspended license is clearly prejudicial to the administration of justice. Operating a motor vehicle without a license is a criminal act in Connecticut. See General Statutes § 14-215.
"Commensurate action" is a relative term. This court notes that in Hoare, supra, both the Commonwealth of Massachusetts and the District of Columbia ordered two year suspensions while the Bar of the Supreme Court entered an order of disbarment. In the present case, the District of Columbia Bar is still considering what commensurate action to impose.
The final decision in this case must and has been balanced with the mitigating factors discussed above. Notwithstanding the Committee's argument and the fact that no defense has been proved by clear and convincing evidence, this court does not believe that an indefinite suspension is warranted. This court concludes, whether under the terms of Practice Book § 2-41 or Practice Book § 2-39, that Mr. Small should be and is hereby suspended for a period of five years, retroactive to the commencement of his interim suspension, October 12, 1994. Simply put, Mr. Small should not have been driving that night. His actions caused an unfortunate death and do reflect on his ability to practice law.
Berger, J.