*Attorney Grievance Commission of Maryland v. Grason John-Allen Eckel*, Miscellaneous Docket AG No. 86, September Term, 2009

**ATTORNEY DISCIPLINE — SANCTIONS — INDEFINITE SUSPENSION:** Respondent, Grason John-Allen Eckel, violated the Maryland Lawyers' Rules of Professional Conduct ("MLRPC") as a result of his convictions for assault in the second degree, sexual offense in the fourth degree, and false imprisonment, one of which is classified as a "serious crime" pursuant to Maryland Rules 16-701(k) and 16-771(a). Such conduct violated MLRPC 8.4(b) and warrants indefinite suspension.

Circuit Court for Dorchester County
Case No.: 09-C-14-021196
Argued: April 1, 2015

IN THE COURT OF APPEALS

OF MARYLAND

Misc. Docket AG No. 86

September Term, 2009

ATTORNEY GRIEVANCE COMMISSION
OF MARYLAND

v.

GRASON JOHN-ALLEN ECKEL

Barbera, C.J.
Harrell
Battaglia
Greene
Adkins
McDonald
Watts,

JJ.

Opinion by Adkins, J.
Watts, J., concurs.

Filed: May 22, 2015

On May 13, 2010, Petitioner, Attorney Grievance Commission ("AGC"), acting through Bar Counsel, filed a Petition for Disciplinary or Remedial Action against Respondent, Grason John-Allen Eckel. Bar Counsel charged Eckel with violating Maryland Lawyers' Rules of Professional Conduct ("MLRPC") 8.4(b),[1] stemming from his 2009 arrest and 2010 conviction for assault in the second degree, sexual offense in the fourth degree, and false imprisonment. Pursuant to Maryland Rule 16-771, Bar Counsel requested a temporary order of suspension against Eckel, which this Court granted on July 21, 2010.

On January 31, 2014, Bar Counsel filed a Motion for Further Proceedings. As permitted by Maryland Rule 16-752(a), we referred the Petition to the Honorable Leah J. Seaton of the Circuit Court for Dorchester County to conduct an evidentiary hearing and make findings of fact and conclusions of law.[2] In those Findings of Fact and Conclusions of Law, Judge Seaton found by clear and convincing evidence that Eckel violated MLRPC Rule 8.4(b).

### THE HEARING JUDGE'S FINDINGS OF FACT

Judge Seaton adopted the Joint Stipulated Findings of Fact and Conclusions of Law

---

[1] MLRPC 8.4(b) provides:
> It is professional misconduct for a lawyer to:
> > (b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects[.]

[2] Prior to the August 25, 2014 evidentiary hearing before Judge Seaton, the parties filed a Joint Petition for Indefinite Suspension, which this Court denied on July 17, 2014.

("Joint Stipulation") offered by Eckel and Bar Counsel and found the following by clear and convincing evidence[3]:

> [Eckel] was admitted to the Bar of the Court of Appeals of Maryland on June 25, 1979. Prior to July 21, 2010, [Eckel] was also admitted to practice law in the District of Columbia and before the United States District Court for the District of Maryland, the United States Court of Appeals for the Fourth Circuit and the Supreme Court of the United States. Prior to August 1, 2009, [Eckel] maintained an office for the practice of law in Cambridge, Dorchester County, Maryland.

> **Criminal Conviction**

> On August 1, 2009, [Eckel] was arrested at his law office and charged with attempted second degree rape, attempted second degree sexual offense, second degree assault, fourth degree sexual offense, and false imprisonment. The charges arose from an incident which occurred at approximately 12:21 a.m. on August 1, 2009, when [Eckel] got into a physical altercation with a female on a couch in his law office in Cambridge, Maryland. The facts established at trial before the Circuit Court for Dorchester County, Maryland, were as follows:

> On the evening of Saturday, July 31, 2009, [Eckel] went to a Cambridge Bar to have a couple of beers. He left the bar around 10:30 p.m. to purchase cigarettes from a local convenience store, which required him to drive down Race Street. At the traffic light at Cedar Street, Tara Cannon, a woman who [Eckel] claimed to have never met before the night in question, walked toward his car and waved at him. He waved back. She walked away as he drove off. After making his purchase, [Eckel] drove back toward the bar and saw the same woman sitting on a bench at the intersection of Race and Cedar Streets. Again Ms. Cannon waved at him. [Eckel's] windows were down, and Cannon allegedly asked him if he wanted "to party." He responded, "why not?" and invited her

_____

[3] Certain portions of the Joint Stipulation present conflicting accounts of the evening of Eckel's arrest. Although included for purposes of placing the arrest in context, we do not—and need not in reaching our ultimate conclusion—rely any of those factual findings described as mere allegations.

2

into his car. Claiming not to have enough cash to take her to a bar, he drove to his nearby law office. They walked inside, sat on a sofa, and [Eckel] put on a concert tape as they began small talk.

Judge Seaton summarized the competing narratives presented by Eckel and Cannon—as well as that of the first law enforcement officer on the scene—regarding the events transpiring in the law office immediately before Eckel's arrest:

> At trial [Eckel] maintained the following version of what transpired: Cannon left her purse on the floor in his office while she went to the store. [Eckel] described the purse as a large, brown purse, with long, pink, shoulder straps, "like you would take to the beach with you." [Eckel] testified that after several minutes, Cannon returned and they resumed talking. During the conversation, Cannon lamented that she did not have any place to stay that night, so [Eckel] offered her the sofa bed in his office. Cannon told [Eckel] that she would prefer to get a room at the Best Value Inn. [Eckel] responded that he would get her a room, and informed Cannon that he would go to an ATM machine to get some money. Shortly after midnight, he went to the nearby ATM, made two withdrawals—one for $260 and another for $60—and returned to the office. [Eckel] testified that he took the cash out of his pocket, counted out $60 to leave under the shelf on the computer table in his office for later use and placed the remaining $260 on the coffee table. Allegedly, Cannon then asked, "Well, can we go now?"
>
> [Eckel] told Cannon that he would drive her to the hotel, but first needed to use the bathroom. According to [Eckel], as he turned toward the direction of the bathroom, he saw and/or heard Cannon grabbing the cash he had just placed on the table. As she headed toward the door, [Eckel] approached Cannon from behind, grabbed the straps of her purse, and informed her that she was not "walking out of here with my money." [Eckel] asserted that in response to his pulling on the purse strap, Cannon struck him, knocking the glasses off his face.
>
> [Eckel's] testimony continued thusly: I'm still pulling on the purse, Your Honor. 'Give me my money. Give me'—she clocks me again screaming, 'Rape, rape.' My window's open,

3

Your Honor. She's screaming to the outside. I'm still pulling on that purse. Finally she's twisting and turning, Your Honor. This is how I get her to the couch, because I cannot pull her to the couch with her hands raised above her head. No one could do that. She would only have to knee me in the groin and it would be over. Upon "getting her to the couch," [Eckel] was positioned on top of Cannon holding her hands down above her head.

According to Cannon, what happened was as follows: After the two sat on the couch for some time, [Eckel] began to rub her leg, and Cannon brushed his hand away. At one point, [Eckel] touched her leg, moved his hand up her leg and touched her vaginal area through her pants. Cannon then became afraid, stood up, and walked to the door. As she was opening the door, [Eckel] approached her from behind, grabbed her, and forced her hands above her head. He then shut the door, preventing her from leaving the building. Cannon stated that [Eckel] then pushed her to the sofa while she fought to get away by scratching [Eckel's] face. Cannon screamed for help as [Eckel] held her hands above her head, all the while sitting on her chest. Cannon believed that [Eckel] intended to force her to engage in sex against her will, and she screamed out for help that she was being raped.

Corporal Antoine Patton of the Cambridge Police Department, who was on a bicycle conducting undercover surveillance for the downtown Cambridge commercial district that evening, heard Cannon yelling: "Help. Somebody please help me. He's trying to rape me. Get off me. I can't breathe. I swear to God I'll give it to you if you just don't hurt me." Patton further testified that he looked in the window and saw [Eckel] holding Cannon down on the sofa. He then kicked in the door, drew his firearm, and ordered: "Mr. Eckel, get off the top of her." According to [Eckel], he immediately got off of Cannon, turned toward the officer, and said, "she stole my money." At that same moment, before the officer could issue a second command, Cannon ran out of the office door "like a rabbit with her purse." Patton placed [Eckel] under arrest and Detective Jennifer Curran subsequently charged [Eckel] with attempted second degree rape, attempted second degree sex offense, fourth degree sex offense, and false imprisonment.

4

Judge Seaton relied significantly on Eckel's criminal conviction arising from this incident and the criminal court's related assessment of those facts[4]:

> Each of the main characters in this case on July 31, 2009 acted from impaired judgment. Ms. Cannon had been drinking and drugging all day. She went from one party to the next getting high and coming down, and getting high again. That was her day. It extended into the evening. Mr. Eckel was out to celebrate that night. He was looking for a good time. He was not sure what, of what it would consist, but he was ready for it. That opportunity to have a good time came in the form of Ms. Cannon, an individual whom this court feels is one of less than stellar character. We suspect that Ms. Cannon represents a plague on this community as a taker and abuser. That does not mean that she can't have something bad happen to her.
>
> It would be a classic understatement if we said that the judgment exercised by Mr. Eckel that night was poor. This court finds the testimony that was presented, most of the testimony presented by him to be beyond credibility. We have testimony from an admitted liar, Ms. Cannon, the testimony from a witness whose credibility we seriously question here today. It is our belief and, therefore, judgment that the evidence in this case demonstrates the intent of Mr. Eckel that night was to have a "party." He took Ms. Cannon to his office where all the opportunities were present. Based on Mr. Eckel's testimony, [this court] inferred that Mr. Eckel had a quiet place where he could put on music and make available the opportunity for sexual relations with Ms. Cannon.
>
> We believe their evening . . . was aided by the consumption of controlled dangerous substances. We believe that Mr. Eckel attempted to have sexual relations and he initiated that by starting at an innocent place of the body, proceeding to the forbidden zone. We further believe that Ms. Cannon protested and in the course of attempting to overcome her and have his way that evening he did assault and falsely imprison her. Throughout this case the testimony we found most illustrative was that offered by Corporal Patton. He was the first objective individual upon the scene, arriving upon the scene that early

---

[4] These excerpts from the Circuit Court were included in the Joint Stipulation.

morning. Note his testimony when he arrived and entered the room. His training and experience taught him that [he] must protect himself and look for weapons. Weapons that might be secreted or openly displayed in the upper portions of the bodies of those in the room. Corporal Patton was therefore on alert for his own safety, as well as the safety of others. What he saw was that no one possessed anything in their hands of such a nature as to cause risk to himself. That means to the court that this witness, the prosecutrix, did not have the type of enlarged purse insisted upon by [Eckel.]

We call [Eckel's] credibility into question because of the extraordinary tale he tells and wants the court to believe he would stash—place money on a table in the presence of someone he asserts he did not know, turn his back on that person and then express shock and surprise that the individual took the opportunity to take the money. There was other testimony from [Eckel] that we found incredible, but the final point in this matter is [Eckel] did commit the offense of fourth degree sexual offense by placing his body or parts of his body in contact with the vaginal area of the victim's body, and that [Eckel] committed the offense of second degree assault by grabbing the arms and body of the victim in an attempt to prevent her departure from the building, and that [Eckel] committed the offense of false imprisonment by attempting to hold and prevent the victim from departing the inner office.

(Ellipses in original.)

Eckel was acquitted of attempted rape and attempted sexual offense in the second degree and found guilty of assault in the second degree, sexual offense in the fourth degree, and false imprisonment. The Court of Special Appeals affirmed the conviction, and we denied Eckel's Petition for Writ of Certiorari.

### THE HEARING JUDGE'S CONCLUSIONS OF LAW

From these facts, Judge Seaton concluded that Eckel violated MLRPC 8.4(b). After reciting the text of that rule, the hearing judge concluded:

6

[Eckel] was convicted of second degree assault, fourth degree sexual offense, and false imprisonment. These are serious crimes, as defined by Md. Rule 16-701(k) and 16-771(a). The facts and circumstances of the conduct involved in these crimes . . . provides clear and convincing evidence that the criminal conduct engaged in by [Eckel] adversely reflected on his fitness as a lawyer in other respects, in violation of MLRPC 8.4(b).

Additionally, Judge Seaton discussed the aggravating and mitigating factors she found relevant to her conclusion:

In light of the case law, the Court finds the following mitigating factors, by a preponderance of the evidence. [Eckel] admitted that his conduct violated MLRPC 8.4(b). [Eckel] has expressed remorse and has cooperated with Bar Counsel in all disciplinary proceedings. Since August 2009, [Eckel] has not consumed alcohol or any controlled substance. For several years, including in August 2009, [Eckel] was serving as his father's sole caretaker. On May 29, 2011, [Eckel's] father passed away at the age of 93. [Eckel] credibly testified that he was under personal stress attributable to caring for an elderly parent in August of 2009.

The criminal charges that gave rise to this disciplinary proceeding are remote in time. More than five years have passed since August 1, 2009, when [Eckel], while under the influence of alcohol, incurred the criminal charges at issue in this case.

[Eckel], through counsel, indicated that he would comply with any directive of the Court of Appeals that he engage in substance abuse treatment and/or 12-step meetings. The hearing judge finds that, when previously required to comply with substance abuse treatment and 12-step meetings, [Eckel] complied in all respects.

[Eckel] has practiced law since 1979. As a practicing attorney, he represented clients *pro bono*. He testified that he represented two female crime victims in a *pro bono* capacity, and that some of his *pro bono* clients were pursuing sexual

harassment claims. [Eckel] has long been active in his community, which speaks to his good character.

\* \* \*

In light of the case law, the Court finds the following aggravating factors, by a preponderance of the evidence.[5] On April 11, 2006, [Eckel] was reprimanded, by consent, by the Court of Appeals for violating MLRPC 8.4(b), based on his conviction for possession of cocaine. As a result of this conviction, [Eckel] completed inpatient and outpatient substance abuse programs, and also attended 12-step meetings. However, on August 25, 2014, [Eckel] admitted to consuming two or three beers on the night that criminal charges were incurred as a result of his contact with Ms. Cannon. Further, [Eckel] has not been involved in any substance abuse treatment or 12-step programs since completing probation.

[Eckel] has now incurred two separate arrests; one connected to drugs, which resulted in a probation before judgment, and the other alcohol-related, which resulted in convictions for assault, fourth degree sexual offense and false imprisonment. Yet, he dances around one obvious issue regarding his fitness to practice law; namely, whether he has a substance abuse addiction or dependency, and whether he can demonstrate that he is in a sustained recovery. During the hearing on August 25, 2014, the hearing judge afforded [Eckel] an opportunity to clarify his status with regard to maintaining a sustained recovery. He never stated, plainly and simply, that he had an addiction or dependency, and that he was committed to, and could document, a sustained period of recovery. The hearing judge finds this failure to be an aggravating factor, but notes, as stated above, that [Eckel], through counsel, indicated that he

---

[5] Judge Seaton indicated that the aggravating factors were found "by a preponderance of the evidence." Such findings must be determined by clear and convincing evidence. Md. Rule 16-757(b) ("[Bar Counsel] has the burden of proving the averments of the petition by clear and convincing evidence."). As discussed *infra*, Eckel contests only one aggravating factor and does not challenge Judge Seaton's use of a preponderance of the evidence standard. We conclude that the hearing judge's other aggravating factors are supported by clear and convincing evidence and will discuss Eckel's exception *infra*.

would abide by any requirement of the Court of Appeals that he attend treatment or 12-step meetings.

(Internal citations omitted.)

## DISCUSSION

### Standard Of Review

Our standard of review in attorney discipline matters is well-settled:

> In attorney discipline proceedings, this Court has original and complete jurisdiction and conducts an independent review of the record. We accept a hearing judge's findings of fact unless we determine that they are clearly erroneous.

> Pursuant to Maryland Rule 16-759(b)(1), we review the hearing judge's proposed conclusions of law without deference. Thus, the ultimate determination . . . as to an attorney's alleged misconduct is reserved for this Court. In that regard, we examine the record to ascertain whether there was sufficient evidence to support the hearing judge's legal conclusions, by a clear and convincing standard of proof.

*Att'y Grievance Comm'n v. Cocco*, 442 Md. 1, 8, 109 A.3d 1176, 1180 (2015) (ellipses in original) (internal citations and quotation marks omitted).

### Exceptions

In attorney discipline proceedings, parties are permitted to file "(1) exceptions to the findings and conclusions of the hearing judge and (2) recommendations concerning the appropriate disposition." Md. Rule 16-758(b). Bar Counsel filed no exceptions to the hearing judge's Findings of Fact and Conclusions of Law. Eckel's exceptions relate only to Judge Seaton's conclusions regarding his alcohol and substance abuse. Specifically, while taking no exception to either Judge Seaton's findings concerning his conduct and its characterization as a MLRPC 8.4(b) violation or the findings concerning mitigating factors,

9

Eckel "takes a limited exception to Judge Seaton's findings and conclusions with respect to [Eckel's] testimony regarding sustained recovery." He asserts that the testimony generated at the hearing does not support the conclusion that he avoided the issue or that he has a substance abuse addiction or dependency. Pointing to research suggesting that relapse after five years of abstinence is rare, Eckel asks this Court "to take judicial notice of his Petition for Reinstatement to Practice Law submitted to Judge Seaton . . . during the hearing on August 25, 2014."

Because we consider Judge Seaton's finding regarding this aggravating factor not material to our ultimate disposition as to whether Eckel committed a MLRPC violation, we need not address his exception now. It relates not to the violation itself, but only to the sanction we impose. We discuss it further, *infra*.

**Conclusions Of Law**

Although neither Bar Counsel nor Eckel contests the hearing judge's conclusions of law, we "review [independently] the hearing judge's proposed conclusions of law without deference." *Cocco*, 442 Md. at 8, 109 A.3d at 1180. Bar Counsel alleges and the hearing judge concluded that Eckel's conduct violated MLRPC 8.4(b). As discussed *supra*, MLRPC 8.4(b) provides that "[i]t is professional misconduct for a lawyer to . . . commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects[.]" The Comment to MLRPC 8.4(b) states that "[m]any kinds of illegal conduct reflect adversely on fitness to practice law[.]" In *Attorney Grievance Commission v. Post*, we reasoned:

10

Rule 8.4(b) recognizes, by its reference to character traits, rather than enumerating specific crimes, that commission of some crimes evidence or demonstrate a character flaw that, were the person committing them applying for admission to the bar, would constitute a significant impediment, if not outright prohibition, to his or her admission or, having been admitted, could result in his or her disbarment. The rule identifies two such traits. In addition to those traits, however, it includes as a catchall object, "fitness as a lawyer in other respects." Since the Rule is specific in the requirement that the criminal act reflect adversely on the character traits or fitness as a lawyer, it follows that what the Rule contemplates is that the criminal act evidence another character trait, which, like honesty and trustworthiness, is relevant or critical to the practice of law.

350 Md. 85, 97, 710 A.2d 935, 941 (1998). Similarly, "unlawful acts of violence, sex offenses, and drug and alcohol offenses, wholly unrelated to an attorney's practice of law, have been recognized across the country as categories of criminal conduct violative of the provisions of the analogue to this or a similarly framed rule." *Att'y Grievance Comm'n v. Thompson*, 367 Md. 315, 323–24, 786 A.2d 763, 768–69 (2001).

We have found a MLRPC 8.4(b) violation because an attorney was convicted of a "serious crime" within the meaning of Maryland Rules 16-701(k) and 16-771.[6] *See Att'y Grievance Comm'n v. Nusbaum*, 436 Md. 609, 84 A.3d 98 (2014) (MLRPC 8.4(b) violation found after classifying attorney's conviction as a "serious crime" within the meaning of Maryland Rule 16-701(k)); *Att'y Grievance Comm'n v. Garcia*, 410 Md. 507, 979 A.2d 146 (2009) (same). Maryland Rule 16-701(k) defines "serious crime" as

---

[6] Maryland Rule 16-771 requires any attorney charged with a serious crime to "promptly inform Bar Counsel in writing of the criminal charge" and permits Bar Counsel to file a Petition for Disciplinary or Remedial Action and request the attorney's immediate suspension upon the attorney's conviction.

**a crime that is in at least one of the following categories**: (1) a felony under Maryland law, (2) a crime in another state or under federal law that would have been a felony under Maryland law had the crime been committed in Maryland, and (3) **a crime under federal law or the law of any state that is punishable by imprisonment for three years or more.**

(Emphasis added.)

Eckel was convicted of assault in the second degree, sexual offense in the fourth degree, and false imprisonment. Assault in the second degree is a serious crime because its maximum sentence exceeds three years.[7] We have found conduct similar to Eckel's to result in a MLRPC 8.4(b) violation when the underlying crime was violent but not inherently dishonest. *See Thompson*, 367 Md. 315, 786 A.2d 763 (MLRPC 8.4(b) violation when attorney convicted of stalking a minor); *Att'y Grievance Comm'n v. Hamby*, 322 Md. 606, 589 A.2d 53 (1991) (MLRPC 8.4(b) violation when attorney convicted of drug charges, resisting arrest, and assault and battery of a law enforcement officer).

Thus, Eckel violated MLRPC 8.4(b) when he was convicted of the serious crime of assault in the second degree, as well as sexual offense in the fourth degree and false imprisonment.

### Sanction

Bar Counsel asks the Court to impose an indefinite suspension. It compares the facts in Eckel's case to several other cases in which this Court concluded that an attorney had violated MLRPC 8.4(b), using those cases as a guide to argue that Eckel's

---

[7] Maryland Code (2002, 2012 Repl. Vol.), § 3-203(b) of the Criminal Law Article provides that a person convicted of the misdemeanor of assault in the second degree "is subject to imprisonment not exceeding 10 years."

transgressions justify an indefinite suspension. Bar Counsel also states that it "seeks an indefinite suspension to allow [it] to better assess [Eckel's] fitness to be reinstated[.]"

Eckel requests that he be reinstated to the practice of law. Stressing his cooperation with Bar Counsel, admission of wrongdoing, and immediate closure of his law practice, Eckel argues that because he "has been suspended from the practice of law since July 21, 2010, the public interest and justice has been adequately served by his interim suspension." Thus, Eckel requests that he receive an "indefinite suspension *nunc pro tunc* on July 21, 2010 . . . and be reprimanded and reinstated[.]"

As we recently discussed:

> In selecting a sanction, we are cognizant of the principle that attorney discipline proceedings are not instituted to punish an offending lawyer, but rather to protect the public and the public's confidence in the legal profession. Imposition of a sanction protects the public in two ways: through deterrence of the type of conduct which will not be tolerated, and by removing those unfit to continue in the practice of law from the rolls of those authorized to practice in this State. Our selection of an appropriate sanction is guided by the nature and gravity of the violation, the intent with which the violation was committed, and the particular circumstances surrounding each case . . . .

*Att'y Grievance Comm'n v. Park*, 427 Md. 180, 195, 46 A.3d 1153, 1161 (2012) (internal citations and quotation marks omitted).

We turn to prior cases, and the sanctions imposed therein, for guidance as to the appropriate sanction. In line with these cases, we agree with Bar Counsel that the

appropriate sanction in this matter is indefinite suspension.[8]  Eckel's criminal acts were less severe than those in cases in which disbarment was found to be appropriate.  Eckel's conduct included no predatory conduct of a minor, as was the case in *Attorney Grievance Commission v. Greenleaf*, 438 Md. 151, 91 A.3d 1066 (2014), in which the attorney was disbarred for soliciting sexual acts from someone he believed to be a minor over nearly an eleven-month span.  The cause of Eckel's arrest occurred during one night and was not the result of a pattern of violent behavior, as was the case in *Attorney Grievance Commission v. Painter*, 356 Md. 293, 739 A.2d 24 (1999), in which the attorney was disbarred after engaging in repeated acts of domestic violence against his wife and children, including multiple convictions for battery.  And, although the hearing judge specifically highlighted the role alcohol may have played in Eckel's transgression, his crime did not include both possession of a controlled substance and assault of a law enforcement officer, as in *Hamby*, 322 Md. 606, 589 A.2d 53 (indefinite suspension with right to reapply after 90 days).  To order a sanction above indefinite suspension would be out of line with these cases.

Similarly, a sanction below indefinite suspension would be dissonant with our previous attorney grievance cases.  Eckel committed a serious crime, and he has previously

---

[8] Eckel asks us "to take judicial notice of his Petition for Reinstatement to Practice Law submitted to Judge Seaton . . . during the hearing on August 25, 2014."  Consideration of possible reinstatement at this time is not appropriate.  Maryland Rule 16-781(a) requires that petitions for reinstatement be filed in the Court of Appeals, not with the judge assigned to hear the disciplinary action under Maryland Rule 16-752(a).  Rule 16-781 sets forth requirements and procedures for reinstatement.  Eckel has not challenged the validity of the interim Order suspending him pursuant to Maryland Rule 16-771.  After conclusion of this proceeding, Eckel may apply for reinstatement in accordance with the dictates of Maryland Rule 16-781.

been sanctioned by this Court for possession of cocaine. *Att'y Grievance Comm'n v. Eckel*, 392 Md. 75, 896 A.2d 304 (2006). This conduct is more serious than previous cases in which we have sanctioned attorneys with something less than an indefinite suspension. *See Att'y Grievance Comm'n v. O'Toole*, 379 Md. 595, 843 A.2d 50 (2004) (30-day suspension for "failing to file various state and federal tax returns from 1998 to 2001 and by failing to pay various federal and state taxes for the same period"); *Att'y Grievance Comm'n v. Gilbert*, 356 Md. 249, 739 A.2d 1 (1999) (30-day suspension for possession of cocaine in attorney's first disciplinary proceeding).

Thus, we see this case as more analogous to those cases in which we have imposed an indefinite suspension. *See, e.g.*, *Att'y Grievance Comm'n v. Beatty*, 409 Md. 11, 19, 972 A.2d 840, 844 (2009) (indefinite suspension for conviction for stalking when attorney "ha[d] conceded that he suffers from mental illness and has represented that he [was] continuing to receive treatment"); *Att'y Grievance Comm'n v. Holt*, 391 Md. 673, 677, 894 A.2d 602, 604 (2006) (indefinite suspension for attorney convicted of "possession of cocaine and . . . aiding and abetting another individual that participated in the crime with the [attorney]"); *Att'y Grievance Comm'n v. Black*, 362 Md. 574, 580, 766 A.2d 119, 122–23 (2001) (indefinite suspension for possession of cocaine when attorney's "addiction [was] severe and [he] had two significant set-backs[ and] fail[ed] to seek assistance from the Director of the Bar Association's Lawyer Counseling program or enroll in a program providing support and structure for his continuing rehabilitation").

We return, finally, to Eckel's exception to Judge Seaton's factual conclusion that Eckel avoided the issue of whether he had an alcohol or substance abuse addiction, and if

15

so, whether he had achieved a sustained recovery from any such addiction. Eckel argues that, because he has not consumed alcohol for five years, he has demonstrated that he is fully recovered from any addiction and Judge Seaton should have so found. Regardless of his five-year sobriety, we still believe that an indefinite suspension is the appropriate sanction for Eckel in light of the crimes he committed. If Eckel applies for reinstatement, his fitness to practice law can be fully evaluated, including any current substance abuse issues.

Accordingly, we conclude that indefinite suspension is the appropriate sanction.

**IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE 16-761. JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST GRASON JOHN-ALLEN ECKEL IN THE SUM OF THESE COSTS.**

Circuit Court for Dorchester County
Case No. 09-C-14-021196

Argued: April 1, 2015

IN THE COURT OF APPEALS

OF MARYLAND

Misc. Docket AG No. 86

September Term, 2009

_____

ATTORNEY GRIEVANCE COMMISSION
OF MARYLAND

v.

GRASON JOHN-ALLEN ECKEL

_____

Barbera, C.J.
Harrell
Battaglia
Greene
Adkins
McDonald
Watts,

JJ.

_____

Concurring Opinion by Watts, J.

_____

Filed: May 22, 2015

Respectfully, I concur. Because Bar Counsel requested an indefinite suspension, I concur in the judgment and sanction imposed by the Court. Had Bar Counsel recommended disbarment, in light of Eckel's convictions for second-degree assault, fourth-degree sexual offense, and false imprisonment, I would have agreed with the sanction of disbarment.